IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| GEORGE WASHINGTON HICKS, JR., | § | |
| #665051, | § | |
|     Petitioner, | § | |
| | § | |
| v. | § | CIVIL NO. 3:16-CV-2168-L-BK |
| | § | |
| LORIE DAVIS, Director, | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Div., | § | |
|     Respondent. | § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to 28 U.S.C. § 636(b) and *Special Order 3*, the petition for writ of habeas corpus under 28 U.S.C. § 2254 was referred to the United States magistrate judge. Upon review of the relevant pleadings and applicable law, and for the reasons that follow, the petition should be **DENIED**.

**I. BACKGROUND**

In 2014, Petitioner was convicted by a jury of murder and, upon the affirmative finding that a deadly weapon was used, he was sentenced to life imprisonment. *State v. Hicks*, No. F11-00837-W (363rd Jud. Dist. Court, Dallas Cty., Tex., Mar. 28, 2014), *aff'd*, No. 05-14-00417-CR, 2015 WL 4462277 (Tex. App.–Dallas, Jul. 21, 2015, pet. ref'd). The Texas Court of Criminal Appeals subsequently denied state habeas relief. *Ex parte Whitehead*, No. WR-84,518-01 (Tex. Crim. App. Oct. 28, 2015) (denying relief without written on the trial court's findings without a hearing); Doc. 18-20.

On July 26, 2016, Petitioner filed his initial *pro se* federal petition in this case, claiming the evidence was insufficient, appellate counsel rendered ineffective assistance, and the trial

court erred in not awarding more back-time credit and in overruling Petitioner's objection to the prosecution's closing argument. Doc. 8 at 6-8 (*Amended Petition*). Petitioner also challenges the deadly-weapon finding and pre-indictment delay. *Id.* Respondent argues that three claims are procedurally barred and the remaining claims lack merit. Doc. 15. Petitioner has filed a reply. Doc. 19.

The following is the summary of the procedural history recounted verbatim from the unpublished opinion of the state appellate court in the direct appeal of this case:

> Before noon on December 23, 1981, a mother, Roxanne Jeeves, and her five-year old son, Kristopher Korper, were murdered in a field in Mesquite. Both mother and son were shot in the head. Deputy Sheriff James Cron, a lieutenant in the physical evidence section, photographed the crime scene and recovered a white knit hat and a knife from the crime scene. Deputy Sheriff Cron found the keys to Jeeves's car and located latent prints on the front passenger window. A blue bag on the front seat of the car contained a black knit hat with a pin in it saying "Super Shit," duct tape, live ammunition, a small vanilla extract bottle and an antique revolver holster. He also collected hairs from inside the black knit hat and some cigarette butts from the car. A small notebook with the name E. Oden in it was also found in the car. Jeeves's purse and a toy were located in the backseat. No firearm was recovered.
>
> In March 2001, hairs recovered from the blue bag were submitted for DNA testing and comparison to CODIS (Combined DNA Index System). There was a hit in the CODIS database. The DNA profile from the hairs matched appellant's DNA. In addition, the DNA on one of the cigarette butts found in Jeeves's car matched the DNA on the hairs from the knit cap. At the time of this discovery, appellant was serving time with the Texas Department of Criminal Justice.
>
> In 2001, the police also interviewed appellant's wife and her brother (Joseph McGary) and son (Derrick McGary). The brother and son both lived with appellant at the time of the double murders in December 2001. The brother and son identified the blue bag found in Jeeves's car as belonging to appellant.
>
> On April 29, 2003, appellant was indicted for the murders of Jeeves (Cause No. F03-21910) and Korper (Cause No. F03-21911). In 2006, the rape kit collected from Jeeves was compared to appellant's DNA profile and there was a match. On January 22, 2007, the State elected to proceed only with Jeeves's case and appellant was tried for her murder. The jury found appellant guilty of murder and the trial court sentenced him to life in prison. The trial court further ruled that the life

sentence would run consecutively to the 80-year sentence appellant had received for aggravated sexual assault in 1994. In February 2007, the State dismissed Korper's murder case (Cause No. F03-21911) for the following reasons:

> As a result of the Defendant now serving two long consecutive sentences, any sentence imposed in this case would not in all probability increase the time he is presently serving. As a result, prosecution of this case at this time cannot be justified. In addition, in order to eliminate the overcrowded condition of this Honorable Court's docket and to best serve the interests of the citizens of Dallas County through the most efficient use of judicial and prosecutorial manpower, the District Attorney's Office believes this case should be dismissed without prejudice.

In December 2011, appellant was re-indicted for Korper's murder. The indictment charged that appellant had intentionally or knowingly caused Korper's death or had intended to cause serious bodily injury by "shooting the said Kristopher Korper with a deadly weapon, to-wit: a firearm."

On March 24, 2014, appellant entered a plea of not guilty as to the charge of murder. The State presented over twenty witnesses during appellant's murder trial.

* * *

On March 28, 2014, the jury found appellant guilty of murder and the trial court assessed punishment at life in prison.

*Hicks*, 2015 WL 4462277, at *1-3.

## II. ANALYSIS

### A. Petitioner's Claims 2, 5 & 7 are Procedurally Barred

"In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Martinez v. Ryan*, 566 U.S. 1, 13 (2012) ("only where a prisoner is impeded or

obstructed in complying with the State's established procedures will a federal habeas court excuse the prisoner from the usual sanction of default").

### 1. Insufficient Evidence Claim is Procedurally Barred– Claim 2

In his second ground, Petitioner asserts "[t]here is insufficient evidence to support that [he] 'himself' personally used or exhibited a deadly weapon." Doc. 8 at 6; Doc. 9 at 6. Petitioner did not raise this issue on direct appeal, asserting it for the first time in his state habeas application.[1] The state habeas court denied relief on the basis that Texas law does not permit a prisoner to collaterally attack the sufficiency of the evidence in a petition for writ of habeas corpus. Doc. 18-21 at 129; *see also Ex parte Grigsby*, 137 S.W.3d 673, 674 (Tex. Crim. App. 2004). Petitioner's failure to raise his claim on direct appeal and in his petition for discretionary review (PDR) constitutes a procedural default that bars review of his claim on the merits by this Court. *See Reed v. Thaler*, 428 F. App'x 453, 454 (5th Cir. 2011) (unpublished *per curiam*) (when a petitioner raises a sufficiency claim only in his state habeas application, "the Texas Court of Criminal Appeals' denial of his application [is] based on an independent and adequate Texas procedural ground such that his sufficiency claim is procedurally defaulted."). Moreover, Petitioner has not demonstrated cause for the default and actual prejudice, or that a fundamental miscarriage of justice would occur if the Court were to refuse to consider his claim. *See Coleman v. Thompson,* 501 U.S. 722, 750 (1991).

In his reply, Petitioner argues that he can raise a "no evidence" claim for the first time on collateral review. Doc. 19 at 2. Relying on *Ex parte Barfield*, 697 S.W.2d 420 (Tex. Crim. App.

---

[1] On direct appeal, Petitioner's only sufficiency claim was that the evidence was legally insufficient to support a finding of guilt for the offense of murder. *Hicks*, 2015 WL 4462277, at *16-17.

1985), Petitioner claims the no-evidence exception applies in his case because "[t]he prosecution was required to prove beyond a reasonable doubt, by actual evidence that the petitioner 'himself' personally used or exhibited a deadly weapon during the commission of the offense or the immediate flight therefrom." Doc. 19 at 2. Petitioner's argument lacks merit, however, because Texas law permits a defendant to raise a "no evidence" claim for the first time on collateral review only when the conviction is totally devoid of any evidentiary support. *Ex parte Barfield*, 697 S.W.2d 420, 421 (Tex. Crim. App. 1985), *superseded by statute on other grounds*, *Ex parte Sewell*, 742 S.W.2d 393, 395 n. 2 (Tex. Crim. App. 1987) (en banc).

Here, the record is not totally devoid of evidentiary support for the affirmative finding that Petitioner used a deadly weapon. The indictment specifically charged that Petitioner "intentionally and knowingly caused the death of Kristopher Korper . . . by shooting [him] with a deadly weapon, to-wit: a firearm," Doc. 18-21 at 132, and the jury found Petitioner "guilty of murder, as charged in the indictment," Doc. 18-21 at 138. As reflected in the state appellate court opinion, Dr. Barnard, the chief medical examiner, "concluded that the victim's cause of death was a gunshot wound to the right forehead area," and other testimony established that Petitioner possessed a gun, which he stored in a blue bag that was found at the murder scene. *Hick*, 2015 WL 4462277, at *2-3, 16.

When, as here, the record is not totally devoid of evidentiary support and the petitioner merely challenges the sufficiency of the evidence to support a conviction, such a claim must be raised on direct appeal. *See Ex parte Williams*, 703 S.W.2d 674, 679-80 (Tex. Crim. App. 1986) (noting that when record is "not totally devoid of evidentiary support," collateral attack is merely insufficiency of evidence claim masquerading as no evidence claim); *Coker v. Thaler*, 670 F.

Supp. 2d 541, 550 & n. 3 (N.D. Tex. 2009) (Godbey, J.) (concluding no evidence claim implicated sufficiency of evidence and, thus, was procedurally barred). Consequently, Petitioner's sufficiency claim is procedurally barred from federal habeas review.

### 2. Claims 5 and 7 are also Procedurally Barred

In his grounds 5 and 7, Petitioner asserts the trial court erred by not giving him more credit for time served and overruling the defense objection to the prosecution's closing argument. Doc. 8 at 6, 8; Doc. 9 at 6-10, 15-17. The state habeas court found that these claims were "not cognizable on habeas." Doc. 18-21 at 129. While Petitioner raised both grounds on direct appeal, *Hick*, 2015 WL 4462277, at *15, 17, he failed to present them to the highest state court for review by his petition for discretionary review. Doc. 18-4 at 3. Thus, both grounds remain unexhausted and his failure to exhaust constitutes a procedural default that bars this Court from considering the claims. *See Morris v. Dretke*, 413 F.3d 484, 491-92 (5th Cir. 2005); *Ries v. Quarterman*, 522 F.3d 517, 523-24 (5th Cir. 2008). Again, while Petitioner may overcome a procedural default by showing cause for the default and actual prejudice, or that a fundamental miscarriage of justice would occur if the Court were to refuse to consider his claims, he has offered nothing to satisfy that heavy burden. Indeed, his reply is completely silent as to cause and prejudice. Doc. 19 at 3.

Nevertheless, Petitioner argues that the Court should review the claims, citing *Bennet v. Whitley*, 41 F.3d 1581, 1582-83 (5th Cir. 1994); *Ylst v. Nunnemaker*, 501 U.S. 797 (1991) in support. Doc. 19 at 3. But those cases are inapposite, holding, *inter alia*, that "[w]hen a state court declines to review the merits of a petitioner's claim on the ground that it has done so already, it creates no bar to federal habeas review." *Cone v. Bell*, 556 U.S. 449, 466–67 (2009)

(citing *Ylst*, 501 U.S. at 804 n.3). That is not the situation here. As stated above, Petitioner did not properly exhaust claims 5 and 7 because he failed to present them to the Texas Court of Criminal Appeals in his petition for discretionary review. It is that failure to exhaust that constitutes procedural default and prevents the consideration of the claims in this federal habeas action. *See Cone,* 556 U.S. at 465 (holding that "[a] claim is procedurally barred when it has not been fairly presented to the state courts for their initial consideration").

Therefore, claims 5 and 7 are procedurally barred from federal habeas review.

### B. Remaining Claims Lack Merit

Petitioner is not entitled to habeas corpus relief unless the state court's adjudication on the merits:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Petitioner bears the burden of establishing that he is entitled to relief. *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002). However, that burden is "difficult to meet," *Harrington v. Richter*, 562 U.S. 86, 102, 105 (2011), because the decision of the state court is reviewed under a "highly deferential" standard and afforded the "benefit of the doubt." *Woodford*, 537 U.S. at 24 (citation and internal quotation marks omitted). Section 2254(d) "was meant to stop just short of imposing a complete bar to federal court relitigation of claims already rejected in state court proceedings, allowing for federal habeas relief only where there have been 'extreme malfunctions in the state criminal justice systems.'" *Wilson v. Cain*, 641 F.3d 96, 100 (5th Cir.

2011) (*quoting Richter*, 562 U.S. at 102)). Consequently, as long as "'fairminded jurists could disagree' on the correctness of the state court's decision, federal habeas relief should not be granted." *Richter*, 562 U.S. at 102 (*quoting Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Explained differently, "even if the federal court disagrees with the state court ruling, the federal court should not grant habeas relief unless the state court ruling was objectively unreasonable." *Wilson*, 641 F.3d at 100; *Richter*, 562 U.S. at 101 ("an *unreasonable* application of federal law is different from an *incorrect* application of federal law.") (quotations and quoted case omitted; emphasis in original).

### 1. Collateral Estoppel – Claim 1

Petitioner asserts the court of appeals abused its discretion in rejecting his argument that collateral estoppel barred the trial court from making a deadly weapon finding. Doc. 8 at 6. Specifically, he disagrees with the state appellate court's conclusion that the "jury not the trial judge was trier of fact concerning punishment issues." Doc. 8 at 6; Doc. 9 at 2. He relies exclusively on his election to have "punishment issues assessed by the trial judge" and claims that "the jury did not have the proper legal authorization to make a deadly weapon determination." Doc. 9 at 3; Doc. 19 at 4.

The state court of appeals, in rejecting Petitioner's arguments, found as follows:

In 2003, appellant was indicted for the murder of the Jeeves. The indictment for that murder charged appellant as follows:

> [Petitioner did] intentionally and knowingly cause the death of ROXANNE JEEVES, an individual, by shooting the said ROXANNE JEEVES with a firearm, a deadly weapon,
>
> And unlawfully then and there intend to cause serious bodily injury to ROXANNE JEEVES and did then and there commit an act clearly

Page 8 of 17

> dangerous to human life, to-wit: by shooting the said ROXANNE JEEVES with a firearm, a deadly weapon, and did thereby cause the death of ROXANNE JEEVES, an individual.

The jury charge provided that the appellant should be found guilty if he "intentionally or knowingly cause the death of ROXANN [sic] JEEVES, an individual, by shooting the said ROXANN [sic] JEEVES with a firearm, a deadly weapon." In January 2007, the jury convicted appellant and the verdict form specifically found appellant "guilty of the offense of murder, as charged in the indictment." When the judge set punishment, however, he did not include a finding that a deadly weapon was used or exhibited in the judgment. In this case, appellant's indictment also included a deadly weapon charge. The jury charge and the judgment also included a deadly weapon finding.

Appellant now argues that the trial court was collaterally estopped from making a deadly weapon finding in this case since no deadly weapon finding was made in the mother's case and the murders took place at the same time. Appellant, however, misconstrues the law. The jury in the Jeeves case convicted appellant "as charged in the indictment." As stated above, that indictment included a deadly weapon finding. When the trier of fact makes an affirmative finding that a deadly weapon was used, the trial court shall enter the finding in the judgment of the court. See TEX. CODE CRIM. PROC. ANN. art. 42.12, § 3g(a)(2) (West Supp. 2014) ("On an affirmative finding under this subdivision, the trial court shall enter the finding in the judgment of the court."); *McCallum v. State*, 311 S.W.3d 9, 19 (Tex. App.—San Antonio 2010, no pet.). It is clear from the facts above that (1) the jury, not the trial court, was the factfinder; (2) an affirmative finding was made; and (3) the trial court should have entered a deadly weapon finding in its judgment in the Jeeves case. Thus, by definition, collateral estoppel does not apply in this case. The Texas Court of Criminal Appeals has previously held that the "key to collateral estoppel is that the original factfinder, whether judge or jury, has necessarily determined an essential fact." *Rollerson v. State*, 227 S.W.3d 718, 730 (Tex. Crim. App. 2007). Here, the jury, not the judge, determined the issue of the deadly weapon finding in the Jeeves case. Accordingly, we overrule appellant's seventh issue regarding collateral estoppel.

*Hicks*, 2015 WL 4462277, at *11.

First, Petitioner's collateral estoppel claim should be rejected because he has not shown, as required by 28 U.S.C. § 2254(d), that the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States, or resulted in a decision that was based on an unreasonable determination of

the facts in light of the evidence presented in the state court proceedings. That notwithstanding, his claim is wholly without merit.

In Texas, "the term 'affirmative finding' means the trier of fact's express determination that a deadly weapon or firearm was actually used or exhibited during the commission of the offense." *Duran v. State*, 492 S.W.3d 741, 746 (Tex. Crim. App. 2016) (*citing Polk v. State*, 693 S.W.2d 391 (Tex. Crim. App. 1985)). In evaluating the correctness of a deadly weapon finding, courts "look to the charging instrument, the jury charge, and the jury verdict." *Id.* One of the ways "in which a court can determine that the trier of fact actually made an affirmative finding of a deadly weapon" is when "the indictment specifically alleged a 'deadly weapon' was used (using the words "deadly weapon") and the defendant was found guilty 'as charged in the indictment.'" *Id.*

As the state appellate court correctly noted, in the Jeeves' case, the indictment and the jury charge contained specific deadly weapon language and the jury found Petitioner guilty "as charged in the indictment." *Hicks*, 2015 WL 4462277, at *11. Regardless of Petitioner's election to have sentence imposed by the court, the jury was the sole trier of fact regarding the use of a deadly weapon, to-wit, a firearm, and was appropriately charged with making the deadly weapon finding. *See Fann v. State*, 702 S.W.2d 602, 603 (Tex. Crim. App. 1985) (en banc) ("when the jury is the trier of the facts the 'affirmative finding' . . . as to whether a firearm was used or exhibited during the commission of the offense, etc., must be made by the jury."). Consequently, as the state court of appeals concluded, "the trial court should have entered a deadly weapon finding in the judgment in the Jeeves case" and Petitioner's collateral estoppel claim fails. *Hicks*, 2015 WL 4462277, at *11.

Relying on *Fann*, 702 S.W.2d at 604, Petitioner argues that "when a defendant 'elects' to have punishment assessed by the trial court judge, then the judge becomes the fact finder concerning the deadly weapon finding, and 'not the jury.'" Doc. 19 at 4. Petitioner's reliance on *Fann* is misplaced, however. The *Fann* court held that

> where, as in the instant case, the trial judge is the trier of fact at the punishment stage and he has heard evidence on the issue, he has the authority to make an affirmative finding as to the use or exhibition of a deadly weapon *if the jury has not decided the matter*. By including such an affirmative finding in the judgment, the court, in essence, responds to the special issue concerning the use or exhibition of a deadly weapon.

702 S.W.2d at 604 (emphasis added). Moreover, unlike in this case, the indictment in *Fann* did not allege that a deadly weapon was used or exhibited during the commission of the offense, and the charge to the jury during the guilt/innocence phase of the trial did not reference the defendant's use of a deadly weapon. 702 S.W.2d at 603. In sum, here, the jury had already decided the matter. Period.

### 2. *Ex Post Facto* Violation - Claim 3

Next, Petitioner asserts an *ex post facto* clause violation, arguing that the jury's finding that he used or exhibited a deadly weapon during the murder was made pursuant to Tex. Code Crim. Proc. Ann. art. 42.12 § 3(g)(a)(2), which was enacted after the commission of the offense. Doc. 8 at 7; Doc. 9 at 10-14. He asserts that Tex. Code Crim. Proc. Ann. art. 42.12 §3(f)(a)(2), which was in effect in 1981 when the offense was committed, permitted an affirmative finding only when "*the defendant used or exhibited* a deadly weapon during the commission of an offense . . . ." Doc. 9 at 12 (emphasis added); *see also* Doc. 19 at 7-8. Petitioner further avers that in 1991, the legislature amended that section to provide an affirmative finding when "*the defendant used or exhibited* the deadly weapon or *was a party to the offense and knew that a*

*deadly weapon would be used or exhibited.*" Doc. 9 at 12 (emphasis added).  This argument is a non-starter.

In denying relief, the state habeas court found that "Article 42.12 of the Code of Criminal Procedure . . . deals with probation which Applicant did not receive" and, "[t]o the extent that this issue challenges the sufficiency of the evidence to support the deadly weapon finding, that issue is not cognizable." Doc. 18-21 at 129-30.  Petitioner has wholly failed to demonstrate that the state court's finding was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

In order to establish an *ex post facto* clause violation, Petitioner must show that a law "imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed." *Weaver v. Graham,* 450 U.S. 24, 28 (1981) (quotation and quoted case omitted).  Two elements are required "for a criminal or penal law to be *ex post facto*: it must be retrospective, that is, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it." *Id.* at 29; *see also United States v. Caulfield,* 634 F.3d 281, 283 (5th Cir. 2011).  In the case *sub judice*, Petitioner cannot show any disadvantage.

As outlined in detail in the previous section, Petitioner was charged and convicted as the sole actor/principal (not under the law of parties), and the overwhelming evidence adduced supported only that theory.  *See* Doc. 18-21 at 132 (Indictment); Doc. 18-21 at 134-35 (Jury Charge).  Thus, the additional language in section 3(g)(a)(2) permitting an affirmative deadly

weapon finding where the actor only *knew that a deadly weapon would be used or exhibited* is simply irrelevant to his case.

Because Petitioner has not demonstrated that the state court's decision rejecting his *ex post facto claim* was in any way unreasonable or involved the contrary application of federal law, he cannot prevail.

### 3. Pre-Indictment Delay – Claim 6

Petitioner also claims he was denied due process by pre-indictment delay, and that the court of appeals' decision rejecting this claim was unreasonable. Doc. 8 at 6; Doc. 9 at 17-21. In support, he asserts (1) the prosecution re-indicted Petitioner only after he had received a favorable parole review; (2) the prosecution had no legitimate reason for failing to resolve his case in 2007 under the original indictment; (3) the prosecution failed to explain why it waited almost five years to re-indict him; (4) the five-year delay before re-indictment "was intended to simply harass and sabotage [his] release to parole"; and (5) Petitioner lost a favorable parole vote and five years of back-time credit for the time he spent in prison without a charging instrument in the Korper's case. Doc. 9 at 20-21; *see also* Doc. 19 at 9-10.

Relying on *State v. Krizan-Wilson*, 354 S.W.3d 808, 813-14 (Tex. Crim. App. 2011), the court of appeals found no due process violation because Petitioner could not meet his burden of showing that the delay (1) caused substantial prejudice to his right to a fair trial, and (2) was an intentional device used to gain a tactical advantage over him. *Hicks*, 2015 WL 4462277, at *10. The court further found that Petitioner could not establish substantial prejudice based on the death of his mother and her unavailability as a witness, concluding that Petitioner not only "fail[ed] to explain how his mother's testimony would have been relevant to his sentencing in

this case," but also failed to call his mother, or any other witness, to testify at his 2007 trial when she was available to testify. *Id.* at *9-10.

In concluding that Petitioner could not meet the tactical advantage prong, the state appellate court found:

> A defendant has the burden to prove that the State's delay was an intentional device used to gain a tactical advantage or for some other improper purpose. *Ford*, 410 S.W.3d at 347. Appellant argues that the State only decided to re-indict appellant after the State found out he was eligible for parole and that the State derived a tactical advantage from the passage of time.
>
> In the hearing on the motions to dismiss, Nancy Mulder, the former Assistant District Attorney who tried the Jeeves case, testified for the State. Mulder testified that the decision not to proceed with Korper's case was not done to gain a tactical advantage over appellant from the passage of time. Instead, Mulder noted that she proceeded with Jeeves's case because it was the stronger case and she held Korper's case back in case the Jeeves case had resulted in a not guilty verdict or a hung jury. She also testified that she dismissed Korper's case because she thought appellant would die in prison. Following the hearing, the trial court made the following conclusions:
>
>> With regard to severing in 2007, I take judicial notice that I think severing happens more often than not down here on a decision that the State makes more often than not to sever the cases, so I don't find anything unusual or any kind of bad faith with regard to them not trying both cases in 2007. With regard to due process, I do not find that the State's dismissal in 2007 was an intentional device to gain any tactical advantage, and the motion is denied.
>
> Accordingly, it appears that the trial court believed Mulder's testimony and we defer to the trial court's finding of fact based on the credibility of a witness. Krizan-Wilson, 354 S.W.3d at 815. Thus, we affirm the trial court's denial of the motion to dismiss and overrule appellant's fifth issue.

*Hicks*, 2015 WL 4462277, at *9-10.

In his federal pleadings, Petitioner does not claim any "'[i]ntentional delay . . . for the purpose of rendering unavailable evidence favorable to the defense or which would tend to undercut the government's case.'" *United States v. Gulley*, 526 F.3d 809, 820 (5th Cir. 2008)

(quoting *Crouch*, 84 F.3d at 1514 n. 23). Rather, he acknowledges that the delay was simply to avert his release on parole, Doc. 9 at 20-21, a matter unrelated to his defense and trial. In support of the prejudice prong, Petitioner reiterates that he lost five years of back-time credit and a favorable parole vote and that, if he had been indicted sooner, "there is a good probability that the petitioner would have been released on parole." Doc. 9 at 20-21; Doc. 19 at 10. However, only "'[e]vents of the trial [can demonstrate] actual prejudice,'" *United States v. Lovasco*, 431 U.S. 783, 789 (1977), and again Petitioner points to nothing that caused substantial prejudice to his defense at trial. *See Gulley*, 526 F.3d at 820 ("To establish prejudice, the defendant must offer more than mere speculation of lost witnesses, faded memories or misplaced documents; he must show an actual loss of evidence that would have aided the defense and that cannot be obtained from other sources.").

Accordingly, Petitioner has not demonstrated that the state court's decision rejecting this claim was contrary to or an unreasonable application of clearly established federal law, and, thus, he cannot prevail.

### 4. Ineffective Assistance of Counsel on Appeal – Claim 4

Lastly, Petitioner asserts appellate counsel rendered ineffective assistance in failing to "adequately develop" his pre-indictment delay claim. Doc. 8 at 7. He claims counsel failed to establish sufficient actual prejudice on direct appeal and show the state's failure to give a valid reason for the delay. *Id.* In his reply, Petitioner maintains "that appellate counsel presented . . . a post-indictment, 6th Amendment speedy trial issue," instead of focusing on why the prosecution delayed his re-indictment in the first place. Doc. 19 at 9. He avers appellate counsel argued prejudice only in terms of the loss of his mother and her inability to testify. Doc. 19 at 9. The

state habeas court rejected Petitioner's ineffectiveness claim, concluding that appellate "counsel raised the [pre-indictment delay] issue and it was rejected by the Court of Appeals." Doc. 18-21 at 130.

Applying the appropriate deference to the state court's decision, and having independently reviewed Petitioner's claim and the state court record, the Court concludes the state court's application of *Strickland v. Washington,* 466 U.S. 668, 689 (1984), was reasonable. *See Cullen v. Pinholster*, 563 U.S. 170, 190 (2011) (reviewing claims of ineffective assistance of counsel under a "doubly deferential" standard). Even assuming deficient performance, Petitioner cannot show the requisite prejudice – namely that the result of the appeal would have been different. *See Smith v. Robbins*, 528 U.S. 259, 285-286 and n. 14 (2000) (applying *Strickland* standard in evaluating ineffective assistance of appellate counsel and noting that the court need not address the performance component if it is easier to dispose of ineffectiveness claim due to lack of prejudice). Petitioner does not suggest a non-frivolous argument that counsel could have presented on appeal to establish prejudice. As noted in the section above, the pre-indictment delay arguments presented in the pleadings in the instant case lack merit. Consequently, appellate counsel was not deficient in failing to present them on direct appeal. *See United States v. Wilkes*, 20 F.3d 651, 653 (5th Cir. 1994) (quoting *Smith v. Puckett*, 907 F.2d 581, 585 n. 6 (5th Cir. 1990) ("Counsel is not deficient for, and prejudice does not issue from, failure to raise [on direct appeal] a legally meritless claim.")).

As Petitioner cannot demonstrate the state court's decision rejecting his claim of ineffective assistance of appellate counsel was unreasonable or contrary to federal law, his claim fails.

## III. RECOMMENDATION

For the foregoing reasons, it is recommended that the petition for writ of habeas corpus be **DENIED**.

**SIGNED** November 29, 2017.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute,* 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE